# UNITED STATES *v.* OWENS

No. 86–877.   Argued November 4, 1987—Decided February 23, 1988

Scalia, J., delivered the opinion of the Court, in which Rehnquist, C. J., and White, Blackmun, Stevens, and O'Connor, JJ., joined. Brennan, J., filed a dissenting opinion, in which Marshall, J., joined, *post*, p. 564. Kennedy, J., took no part in the consideration or decision of the case.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Weld, Robert H. Klonoff,* and *John F. De Pue.*

*Allan Ides,* by invitation of the Court, 480 U. S. 929, argued the cause for respondent. With him on the brief was *Stanley A. Goldman.*

Justice Scalia delivered the opinion of the Court.

This case requires us to determine whether either the Confrontation Clause of the Sixth Amendment or Rule 802 of the Federal Rules of Evidence bars testimony concerning a prior, out-of-court identification when the identifying witness is

unable, because of memory loss, to explain the basis for the identification.

I

On April 12, 1982, John Foster, a correctional counselor at the federal prison in Lompoc, California, was attacked and brutally beaten with a metal pipe. His skull was fractured, and he remained hospitalized for almost a month. As a result of his injuries, Foster's memory was severely impaired. When Thomas Mansfield, an FBI agent investigating the assault, first attempted to interview Foster, on April 19, he found Foster lethargic and unable to remember his attacker's name. On May 5, Mansfield again spoke to Foster, who was much improved and able to describe the attack. Foster named respondent as his attacker and identified respondent from an array of photographs.

Respondent was tried in Federal District Court for assault with intent to commit murder under 18 U. S. C. § 113(a). At trial, Foster recounted his activities just before the attack, and described feeling the blows to his head and seeing blood on the floor. He testified that he clearly remembered identifying respondent as his assailant during his May 5th interview with Mansfield. On cross-examination, he admitted that he could not remember seeing his assailant. He also admitted that, although there was evidence that he had received numerous visitors in the hospital, he was unable to remember any of them except Mansfield, and could not remember whether any of these visitors had suggested that respondent was the assailant. Defense counsel unsuccessfully sought to refresh his recollection with hospital records, including one indicating that Foster had attributed the assault to someone other than respondent. Respondent was convicted and sentenced to 20 years' imprisonment to be served consecutively to a previous sentence.

On appeal, the United States Court of Appeals for the Ninth Circuit considered challenges based on the Confronta-

tion Clause and Rule 802 of the Federal Rules of Evidence.[1] By divided vote it upheld both challenges (though finding the Rule 802 violation harmless error), and reversed the judgment of the District Court. 789 F. 2d 750 (1986). We granted certiorari, 479 U. S. 1084 (1987), to resolve the conflict with other Circuits on the significance of a hearsay declarant's memory loss both with respect to the Confrontation Clause, see, *e. g., United States ex rel. Thomas* v. *Cuyler,* 548 F. 2d 460, 462–463 (CA3 1977), and with respect to Rule 802, see, *e. g., United States* v. *Lewis,* 565 F. 2d 1248, 1252 (CA2 1977), cert. denied, 435 U. S. 973 (1978).

## II

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." This has long been read as securing an adequate opportunity to cross-examine adverse witnesses. See, *e. g., Mattox* v. *United States,* 156 U. S. 237, 242–243 (1895); *Douglas* v. *Alabama,* 380 U. S. 415, 418 (1965). This Court has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory, but in two cases has expressly left that possibility open.

In *California* v. *Green,* 399 U. S. 149, 157–164 (1970), we found no constitutional violation in the admission of testimony that had been given at a preliminary hearing, relying on (as one of two independent grounds) the proposition that the opportunity to cross-examine the witness at trial satisfied the Sixth Amendment's requirements. We declined, however, to decide the admissibility of the same witness' out-of-court statement to a police officer concerning events that at trial he was unable to recall. In remanding on this point, we

---

[1] This case has been argued, both here and below, as though Federal Rule of Evidence 801(d)(1)(C) were the basis of the challenge. That is substantially but not technically correct. If respondent's arguments are accepted, it is Rule 802 that would render the out-of-court statement inadmissible as hearsay; but as explained in Part III, it is ultimately Rule 801(d)(1)(C) that determines whether Rule 802 is applicable.

noted that the state court had not considered, and the parties had not briefed, the possibility that the witness' memory loss so affected the petitioner's right to cross-examine as to violate the Confrontation Clause.[2]  *Id.*, at 168–169.  Justice Harlan, in a scholarly concurrence, stated that he would have reached the issue of the out-of-court statement, and would have held that a witness' inability to "recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence."  *Id.*, at 188.

In *Delaware* v. *Fensterer*, 474 U. S. 15 (1985) *(per curiam)*, we determined that there was no Confrontation Clause violation when an expert witness testified as to what opinion he had formed, but could not recollect the basis on which he had formed it.  We said:

> "The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.  To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."  *Id.*, at 21–22.

Our opinion noted that a defendant seeking to discredit a forgetful expert witness is not without ammunition, since the jury may be persuaded that "his opinion is as unreliable as his memory."  *Id.*, at 19.  We distinguished, however, the unresolved issue in *Green* on the basis that that involved the introduction of an out-of-court statement.  474 U. S., at 18.

---

[2] On remand, the California Supreme Court concluded that the Confrontation Clause was not violated by the out-of-court statement, because the declarant testified under oath, subject to cross-examination, and the jury was able to observe his demeanor.  *People* v. *Green*, 3 Cal. 3d 981, 479 P. 2d 998, cert. dism'd, 404 U. S. 801 (1971).

JUSTICE STEVENS, concurring in the judgment, suggested that the question at hand was in fact quite close to the question left open in *Green*. 474 U. S., at 23–24.

Here that question is squarely presented, and we agree with the answer suggested 18 years ago by Justice Harlan. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky* v. *Stincer*, 482 U. S. 730, 739 (1987), quoting *Fensterer, supra*, at 20 (emphasis added); *Delaware* v. *Van Arsdall*, 475 U. S. 673, 679 (1986); *Ohio* v. *Roberts*, 448 U. S. 56, 73, n. 12 (1980). As *Fensterer* demonstrates, that opportunity is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief. It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931–932 (J. Chadbourn rev. 1970)) the very fact that he has a bad memory. If the ability to inquire into these matters suffices to establish the constitutionally requisite opportunity for cross-examination when a witness testifies as to his current belief, the basis for which he cannot recall, we see no reason why it should not suffice when the witness' past belief is introduced and he is unable to recollect the reason for that past belief. In both cases the foundation for the belief (current or past) cannot effectively be elicited, but other means of impugning the belief are available. Indeed, if there is any difference in persuasive impact between the statement "I believe this to be the man who assaulted me, but can't remember why" and the statement "I don't know whether this is the man who assaulted me, but I told the police I believed so earlier," the former would seem, if anything, more damaging and hence give rise to a greater need for memory-testing, if that is to be considered essential to an opportunity for effective cross-

examination. We conclude with respect to this latter example, as we did in *Fensterer* with respect to the former, that it is not. The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons, as is demonstrated by defense counsel's summation in this very case, which emphasized Foster's memory loss and argued that his identification of respondent was the result of the suggestions of people who visited him in the hospital.

Our constitutional analysis is not altered by the fact that the testimony here involved an out-of-court identification that would traditionally be categorized as hearsay. See Advisory Committee's Notes on Fed. Rule Evid. 801(d)(1)(C), 28 U. S. C. App., p. 717. This Court has recognized a partial (and somewhat indeterminate) overlap between the requirements of the traditional hearsay rule and the Confrontation Clause. See *Green*, 399 U. S., at 155–156; *id.*, at 173 (Harlan, J., concurring). The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the Constitution required the testimony to be examined for "indicia of reliability," *Dutton* v. *Evans*, 400 U. S. 74, 89 (1970), or "particularized guarantees of trustworthiness," *Roberts, supra*, at 66. We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination. In that situation, as the Court recognized in *Green*, the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements. 399 U. S., at 158–161. We do not think that a constitutional line drawn by the Confrontation Clause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect.

Respondent has argued that this Court's jurisprudence concerning suggestive identification procedures shows the special dangers of identification testimony, and the special importance of cross-examination when such hearsay is proffered. See, *e. g.*, *Manson* v. *Brathwaite*, 432 U. S. 98 (1977); *Neil* v. *Biggers*, 409 U. S. 188 (1972). Respondent has not, however, argued that the identification procedure used here was in any way suggestive. There does not appear in our opinions, and we decline to adopt today, the principle that, because of the mere possibility of suggestive procedures, out-of-court statements of identification are inherently less reliable than other out-of-court statements.

## III

Respondent urges as an alternative basis for affirmance a violation of Federal Rule of Evidence 802, which generally excludes hearsay. Rule 801(d)(1)(C) defines as not hearsay a prior statement "of identification of a person made after perceiving the person," if the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement." The Court of Appeals found that Foster's identification statement did not come within this exclusion because his memory loss prevented his being "subject to cross-examination concerning the statement." Although the Court of Appeals concluded that the violation of the Rules of Evidence was harmless (applying for purposes of that determination a "more-probable-than-not" standard, rather than the "beyond-a-reasonable-doubt" standard applicable to the Confrontation Clause violation, see *Delaware* v. *Van Arsdall*, 475 U. S., at 684), respondent argues to the contrary.

It seems to us that the more natural reading of "subject to cross-examination concerning the statement" includes what was available here. Ordinarily a witness is regarded as "subject to cross-examination" when he is placed on the stand, under oath, and responds willingly to questions. Just as with the constitutional prohibition, limitations on the scope

of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists. But that effect is not produced by the witness' assertion of memory loss—which, as discussed earlier, is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement. Rule 801(d)(1)(C), which specifies that the cross-examination need only "concer[n] the statement," does not on its face require more.

This reading seems even more compelling when the Rule is compared with Rule 804(a)(3), which defines "[u]navailability as a witness" to include situations in which a declarant "testifies to a lack of memory of the subject matter of the declarant's statement." Congress plainly was aware of the recurrent evidentiary problem at issue here—witness forgetfulness of an underlying event—but chose not to make it an exception to Rule 801(d)(1)(C).

The reasons for that choice are apparent from the Advisory Committee's Notes on Rule 801 and its legislative history. The premise for Rule 801(d)(1)(C) was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications. Advisory Committee's Notes on Rule 801, 28 U. S. C. App., p. 717. Thus, despite the traditional view that such statements were hearsay, the Advisory Committee believed that their use was to be fostered rather than discouraged. Similarly, the House Report on the Rule noted that since, "[a]s time goes by, a witness' memory will fade and his identification will become less reliable," minimizing the barriers to admission of more contemporaneous identification is fairer to defendants and prevents "cases falling through because the witness can no longer recall the identity of the person he saw commit the crime." H. R. Rep. No. 94–355, p. 3 (1975). See also S. Rep. No. 94–199, p. 2 (1975). To judge from the House and Senate Reports, Rule 801(d)(1)(C) was in part di-

rected to the very problem here at issue: a memory loss that makes it impossible for the witness to provide an in-court identification or testify about details of the events underlying an earlier identification.

Respondent argues that this reading is impermissible because it creates an internal inconsistency in the Rules, since the forgetful witness who is deemed "subject to cross-examination" under 801(d)(1)(C) is simultaneously deemed "unavailable" under 804(a)(3). This is the position espoused by a prominent commentary on the Rules, see 4 J. Weinstein & M. Berger, Weinstein's Evidence 801–120 to 801–121, 801–178 (1987). It seems to us, however, that this is not a substantive inconsistency, but only a semantic oddity resulting from the fact that Rule 804(a) has for convenience of reference in Rule 804(b) chosen to describe the circumstances necessary in order to admit certain categories of hearsay testimony under the rubric "Unavailability as a witness." These circumstances include not only absence from the hearing, but also claims of privilege, refusals to obey a court's order to testify, and inability to testify based on physical or mental illness or memory loss. Had the rubric instead been "unavailability as a witness, memory loss, and other special circumstances" there would be no apparent inconsistency with Rule 801, which is a definition section excluding certain statements entirely from the category of "hearsay." The semantic inconsistency exists not only with respect to Rule 801(d)(1)(C), but also with respect to the other subparagraphs of Rule 801(d)(1). It would seem strange, for example, to assert that a witness can avoid introduction of testimony from a prior proceeding that is inconsistent with his trial testimony, see Rule 801(d)(1)(A), by simply asserting lack of memory of the facts to which the prior testimony related. See *United States* v. *Murphy*, 696 F. 2d 282, 283–284 (CA4 1982), cert. denied, 461 U. S. 945 (1983). But that situation, like this one, presents the verbal curiosity that the witness is "subject to cross-examination" under Rule 801

while at the same time "unavailable" under Rule 804(a)(3). Quite obviously, the two characterizations are made for two entirely different purposes and there is no requirement or expectation that they should coincide.

For the reasons stated, we hold that neither the Confrontation Clause nor Federal Rule of Evidence 802 is violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification. The decision of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

JUSTICE KENNEDY took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

In an interview during his month-long hospitalization, in what was apparently a singular moment of lucid recollection, John Foster selected respondent James Owens' photograph from an array of possible suspects and informed FBI Agent Thomas Mansfield that it was respondent who had attacked him with a metal pipe on the morning of April 12, 1982. Had Foster subsequently died from his injuries, there is no doubt that both the Sixth Amendment and the Federal Rules of Evidence would have barred Mansfield from repeating Foster's out-of-court identification at trial. Fortunately, Foster survived the beating; his memory, however, did not, and by the time of respondent's trial he could no longer recall his assailant or explain why he had previously identified respondent as such. This profound memory loss, therefore, rendered Foster no less a conduit for stale and inscrutable evidence than Mansfield would have been, yet the Court nevertheless concludes that because defense counsel was afforded an unrestricted opportunity to cross-examine him,

Foster's unadorned reiteration of his earlier statement did not deprive respondent of his constitutional right to confront the witness against him. In my view, the Court today reduces the right of confrontation to a purely procedural protection, and a markedly hollow one at that. Because I believe the Sixth Amendment guarantees criminal defendants the right to engage in cross-examination sufficient to "affor[d] the trier of fact a satisfactory basis for evaluating the truth of [a] prior statement," *California* v. *Green*, 399 U. S. 149, 161 (1970), and because respondent clearly was not afforded such an opportunity here, I dissent.

## I

On April 12, 1982, Foster was brutally assaulted while on duty as a correctional counselor at the federal prison in Lompoc, California. His attacker beat him repeatedly about the head and upper body with a metal pipe, inflicting numerous and permanently disabling injuries, one of which was a profound loss of short-term memory. Foster spent nearly a month in the hospital recuperating from his injuries, much of that time in a state of semiconsciousness. Although numerous people visited him, including his wife who visited daily, Foster remembered none except Agent Mansfield. While he had no recollection of Mansfield's first visit on April 19, he testified that his memory of the interview Mansfield conducted on May 5 was "vivid." App. 28. In particular, he recalled telling Mansfield: "[A]fter I was hit I looked down and saw the blood on the floor, and jammed my finger into Owens' chest, and said, 'That's enough of that,' and hit my alarm button." *Id.*, at 31.

Foster testified that at the time he made these statements, he was certain that his memory was accurate. In addition, he recalled choosing respondent's photograph from those Mansfield showed him. There is no dispute, however, that by the time of trial Foster could no longer remember who had assaulted him or even whether he had seen his attacker.

Nor could he recall whether any of the prison officials or other persons who visited him in the hospital had ever suggested that respondent had beaten him. A medical expert who testified on behalf of the prosecution explained that Foster's inability to remember most of the details of the assault was attributable to a gradual and selective memory loss caused by his head injuries.

## II

The principal witness against respondent was not the John Foster who took the stand in December 1983—that witness could recall virtually nothing of the events of April 12, 1982, and candidly admitted that he had no idea whether respondent had assaulted him. Instead, respondent's sole accuser was the John Foster who, on May 5, 1982, identified respondent as his attacker. This John Foster, however, did not testify at respondent's trial: the profound memory loss he suffered during the approximately 18 months following his identification prevented him from affirming, explaining, or elaborating upon his out-of-court statement just as surely and completely as his assertion of a testimonial privilege, or his death, would have. Thus, while the Court asserts that defense counsel had "realistic weapons" with which to impugn Foster's prior statement, *ante*, at 560, it does not and cannot claim that cross-examination could have elicited any information that would have enabled a jury to evaluate the trustworthiness or reliability of the identification. Indeed, although the Court suggests that defense counsel was able to explore Foster's "lack of care and attentiveness," his "bad memory," and the possibility that hospital visitors suggested respondent's name to him, *ante*, at 559, 560, Foster's memory loss precluded any such inquiries: he simply could not recall whether he had actually seen his assailant or even whether he had had an opportunity to see him, nor could he remember any of his visitors, let alone whether any of them had suggested that respondent had attacked him. Moreover, by the

time of trial, Foster was unable to shed any light on the accuracy of his May 1982 recollection of the assault; the most he could state was that on the day of the interview he felt certain that his statements were true. As the court below found, "[c]learly, two of the three dangers surrounding Foster's out-of-court identifications—misperception and failure of memory—could not be mitigated in any way by the only cross-examination of Foster that was available to [respondent]." 789 F. 2d 750, 759 (CA9 1986).

In short, neither Foster nor the prosecution could demonstrate the basis for Foster's prior identification. Nevertheless, the Court concludes that the Sixth Amendment presents no obstacle to the introduction of such an unsubstantiated out-of-court statement, at least not where the declarant testifies under oath at trial and is subjected to unrestricted cross-examination. According to the Court, the Confrontation Clause is simply a procedural trial right that "guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Ante*, at 559 (citations omitted; internal quotation marks omitted; emphasis in original).

Although the Court suggests that the result it reaches today follows naturally from our earlier cases, we have never before held that the Confrontation Clause protects nothing more than a defendant's right to question live witnesses, no matter how futile that questioning might be. On the contrary, as the Court's own recitation of our prior case law reveals, we have repeatedly affirmed that the right of confrontation ensures "an opportunity for *effective* cross-examination." *Delaware* v. *Fensterer*, 474 U. S. 15, 20 (1985) *(per curiam)* (emphasis added); see also *Nelson* v. *O'Neil*, 402 U. S. 622, 629 (1971) (Confrontation Clause does not bar admission of out-of-court statement where defendant has "the benefit of full and *effective* cross-examination of [declarant]") (emphasis added); *California* v. *Green*, 399 U. S.,

at 159 (introduction of out-of-court statement does not violate Confrontation Clause "as long as the defendant is assured of full and *effective* cross-examination at the time of trial") (emphasis added). While we have rejected the notion that effectiveness should be measured in terms of a defendant's ultimate success, we have never, until today, equated effectiveness with the mere opportunity to pose questions. Rather, consistent with the Confrontation Clause's mission of "advanc[ing] a practical concern for the accuracy of the truth-determining process in criminal trials," *Dutton* v. *Evans*, 400 U. S. 74, 89 (1970), we have suggested that the touchstone of effectiveness is whether the cross-examination affords "'the trier of fact . . . a satisfactory basis for evaluating the truth of the prior statement.'" *Ibid.* (quoting *California* v. *Green*, *supra*, at 161). See also *Ohio* v. *Roberts*, 448 U. S. 56, 73 (1980) (introduction of prior testimony where the declarant was unavailable at trial did not violate Confrontation Clause where previous cross-examination of declarant "afforded the trier of fact a satisfactory basis for evaluating the truth of the prior statement" (citation omitted; internal quotation marks omitted));[1] *Mancusi* v. *Stubbs*, 408 U. S. 204, 216 (1972)

---

[1] In *Ohio* v. *Roberts*, the Court indicated that, for purposes of determining the constitutional admissibility of prior testimony where the declarant is unavailable at trial, it is unnecessary to consider whether defense counsel's questioning at the prior hearing "surmount[ed] some inevitably nebulous threshold of 'effectiveness,'" and held that "in all but . . . extraordinary cases, no inquiry into 'effectiveness' is required." 448 U. S., at 73 n. 12. In so ruling, however, the Court did not dispense with the Sixth Amendment's substantive minima of effectiveness, but rather rejected the claim that prior testimony should be deemed inherently unreliable where the declarant was cross-examined by an attorney whose performance is subsequently deemed ineffective in collateral habeas corpus proceedings. In this context, therefore, "effectiveness" obviously refers to the *attorney's* performance, not the impediments to meaningful cross-examination created by a *witness'* memory loss. Indeed, the footnote in question is appended to a sentence once again affirming the need for affording the factfinder an adequate basis for assessing the truth of prior statements, and the author of *Roberts* has twice since confirmed that the Sixth Amend-

(same).    Where no opportunity for such cross-examination exists, we have recognized that the Sixth Amendment permits the introduction of out-of-court statements only when they bear sufficient independent "indicia of reliability." *Dutton* v. *Evans, supra,* at 89.

In dispensing with these substantive constitutional requirements today, the Court relies almost exclusively on our decision in *Delaware* v. *Fensterer, supra,* a case that did not involve the introduction of prior statements.    *Fensterer* concerned an expert witness' inability to remember which of three possible scientific theories he had used in formulating his opinion.    Although Fensterer contended that the witness' forgetfulness made it impossible to impeach the scientific validity of his conclusions, we noted that "an expert who cannot recall the basis for his opinion invites the jury to find that his opinion is as reliable as his memory." *Id.,* at 19. While the witness' endorsement of a given scientific theory might have maximized the effectiveness of cross-examination, the Confrontation Clause guarantees only that level of effectiveness necessary to afford the factfinder a satisfactory basis for assessing the validity of the evidence offered.    Thus, because the expert's inability to remember the basis for his opinion was self-impeaching, the constitutional guarantee had clearly been satisfied.

*Fensterer,* therefore, worked no change in our Confrontation Clause jurisprudence, yet the Court purports to discern in it a principle under which all live testimony as to a witness' past belief is constitutionally admissible, provided the de-

_____

ment guarantees an opportunity for meaningful cross-examination.    See *Kentucky* v. *Stincer,* 482 U. S. 730, 739, n. 9 (1987) (BLACKMUN, J.) (a state rule precluding access to certain information before trial "may hinder [the] defendant's opportunity for *effective* cross-examination at trial, and thus . . . may violate the Confrontation Clause") (emphasis in original); *Pennsylvania* v. *Ritchie,* 480 U. S. 39, 63, n. 1 (1987) (BLACKMUN, J., concurring) (*Fensterer* "[did] not imply that concern about . . . effectiveness [of cross-examination] has no place in analysis under the Confrontation Clause").

fendant is afforded an opportunity to question the witness. From this the Court derives the corollary that prior statements as to past belief are equally admissible, again given the requisite opportunity for questioning the declarant at trial. Accordingly, the Court asserts, the Confrontation Clause draws no line "between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Ante,* at 560. The obvious shortcoming in this reasoning, of course, is that *Fensterer* announced no such blanket rule: while the expert's memory lapse in that case was self-impeaching, it does not follow—and we have therefore never held—that all forgetfulness may be so characterized. Certainly in the present case, Foster's inability in December 1983 to remember the events of April 1982 in no way impugned or otherwise cast doubt upon the accuracy or trustworthiness of his memory in May 1982, particularly in light of the uncontradicted medical testimony explaining that his forgetfulness was the result of the head injuries he sustained. Under our prior cases, then, the constitutional admissibility of Foster's prior statement, and the testimony of the Court's hypothetical witness who cannot recall the basis for his past belief, should depend on whether the memory loss so seriously impedes cross-examination that the factfinder lacks an adequate basis upon which to assess the truth of the proffered evidence. Whatever may be said of the Court's hypothetical, it is clear in the case before us that Foster's near total loss of memory precluded any meaningful examination or assessment of his out-of-court statement and thus should have barred the admission of that statement.

To the extent the Court's ruling is motivated by the fear that a contrary result will open the door to countless Confrontation Clause challenges to the admission of out-of-court statements, that fear is groundless. To begin with, cases such as the present one will be rare indeed. More typically, witnesses asserting a memory loss will either not suffer (or

claim) a total inability to recollect, or will do so under circumstances that suggest bias or ulterior motive; in either case, given the threshold of "effectiveness" established by our prior decisions, the witness' partial memory or self-interest in claiming a complete memory loss will afford the factfinder an adequate basis upon which to evaluate the reliability and trustworthiness of the out-of-court statement. Even in those relatively few cases where no such basis can be elicited, the prior statement is still admissible if it bears independent "indicia of reliability." Finally, assessments of "effectiveness" for Confrontation Clause purposes are no different than those undertaken by courts in deciding common evidentiary questions, and thus should not prove unduly burdensome.[2] In any event, to the extent such assessments prove inconvenient or troublesome, those burdens flow from our commitment to a Constitution that places a greater value on individual liberty than on efficient judicial administration.

## III

I agree with the Court that the Confrontation Clause does not guarantee defendants the right to confront only those witnesses whose testimony is not marred by forgetfulness,

---

[2] Indeed, in a case such as this one, the inquiry into the constitutional adequacy of defendant's opportunity for cross-examination is identical to that required under Federal Rule of Evidence 804(a)(3), which deems a declarant "unavailable" if, at trial, he or she "testifies to a lack of memory of the *subject matter* of the declarant's [prior] statement" (emphasis added). The Court today, of course, concludes that notwithstanding Rule 804(a)'s definition of unavailability, a prior identification is not hearsay under Rule 801(d)(1)(C), and is therefore admissible, as long as the declarant is subject to cross-examination concerning the statement itself, regardless of whether the declarant can recall the basis for that statement. See *ante,* at 561–564. Because I believe such a construction of Rule 801(d)(1)(C) renders it unconstitutional under the Confrontation Clause, I would require, consistent with Rule 804(a), that the declarant be subject to cross-examination as to the subject matter of the prior statement. See 4 J. Weinstein & M. Berger, Weinstein's Evidence 801–120 to 801–121 (1987) (endorsing such a construction of Rule 801(d)(1)(C)).

confusion, or evasion, and that the right of confrontation "'is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination.'" *Ante*, at 558 (quoting *Fensterer*, 474 U. S., at 22). But as we stressed just last Term, this right to cross-examination "is essentially a 'functional' right designed to promote reliability in the truth-finding functions of a criminal trial." *Kentucky* v. *Stincer*, 482 U. S. 730, 737 (1987). In the present case, respondent Owens was afforded no opportunity to probe and expose the infirmities of Foster's May 5, 1982, recollections, for here cross-examination, the "greatest legal engine ever invented for the discovery of truth," *California* v. *Green*, 399 U. S., at 158, stood as helpless as current medical technology before Foster's profound memory loss. In concluding that respondent's Sixth Amendment rights were satisfied by Foster's mere presence in the courtroom, the Court reduces the right of confrontation to a hollow formalism. Because I believe the Confrontation Clause guarantees more than the right to ask questions of a live witness, no matter how dead that witness' memory proves to be, I dissent.