**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0161n.06**
**Filed: March 24, 2008**

**No. 06-1958**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TERRY KATT, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BLAINE C. LAFLER, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: MERRITT, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. Terry Katt, who received three life sentences in Michigan for criminal sexual conduct, appeals the dismissal of his petition for habeas corpus on the sole issue certified by the district court: did the state court's admission of a social worker's testimony recounting her interview with Katt's seven-year-old victim violate clearly established federal law? Katt contends that it did in two ways: 1) his conviction based on residual hearsay violated his due process right to a fair trial; and 2) the hearsay testimony violated his Confrontation Clause rights. Finding that Katt procedurally defaulted his Due Process Clause claim and that he cannot show the Michigan courts unreasonably applied clearly established Confrontation Clause law, we affirm.

I

Katt shared a house with his landlord, the landlord's fiancée, the fiancée's five-year-old daughter, A.D., and seven-year-old son, D.D, and two other men.

Concerns about Katt's sexual abuse of the two children arose after Angela Bowman, a Children's Protective Services investigator, visited D.D. at school to investigate an anonymous report that his mother was physically abusing D.D. and his sister. Although D.D. did not corroborate any abuse by his mother, he spontaneously revealed during the interview that "Uncle Terry was doing nasty things to him" and his sister. After further questions revealed D.D.'s advanced sexual knowledge and use of adult terminology, Bowman contacted the police.

The police arrested Katt and charged him with four counts of first-degree criminal sexual conduct. At his trial both children testified via two-way closed-circuit camera, a procedure to which Katt stipulated. During the testimony, they demonstrated Katt's sexual abuse using dolls. Supplementing the children's testimony, Bowman gave a more specific and fresh account of the school interview with D.D.

Katt countered that his feud with the children's mother prompted her to coach her children to fabricate the story, but the jury evidently disbelieved him, returning guilty verdicts on all but one of the counts, which yielded three consecutive life sentences. *People v. Katt*, 639 N.W.2d 815, 816 (Mich. Ct. App. 2001).

During Katt's Michigan appeals, the trial court's admission of Bowman's hearsay testimony sparked a prolonged legal battle over Michigan Rule of Evidence 803(24), the so-called "residual," or "catchall," hearsay exception. Bowman's recounting of the child's story failed to qualify for admission under the state's "tender-years exception" because D.D. told his mother about the abuse a few days before he met Bowman.[1] Because the evidence was a "near-miss" for that specifically applicable rule, Katt contended that sanctioning its admission under the general residual exception would be inappropriate as a sort of end-run around the more precise rule. In the end, both the Michigan Court of Appeals and the Michigan Supreme Court upheld the admission of Bowman's testimony under the residual exception as a matter of first impression. *See People v. Katt*, 639 N.W.2d 815 (Mich. Ct. App. 2001), *aff'd*, 662 N.W.2d 12 (Mich. 2003).

Having exhausted his Michigan remedies, Katt petitioned for habeas corpus relief under 28 U.S.C. § 2254, setting forth four claims. Although the district court denied the petition, it was persuaded that reasonable jurists could debate the federal constitutional propriety of the admission of the hearsay testimony under Michigan's residual hearsay exception. With this appeal Katt maintains that the social worker's testimony violated his rights under the Due Process and Confrontation Clauses.

II

---

[1]The rule admits a social worker's testimony about child abuse only if the social worker is the first to hear the accusations. *See* Mich. R. Evid. 803A.

A. *Due Process Claim*

We review de novo a district court's judgment denying habeas corpus relief. *Bey v. Bagley*, 500 F.3d 514, 518 (6th Cir. 2007). And because Katt filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its provisions govern. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

A habeas petitioner must "fairly present" federal claims in state courts and exhaust state remedies before seeking collateral relief. 28 U.S.C. § 2254(b)(1)(A); *see Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). Exhaustion "protect[s] the state courts' role in the enforcement of federal law and prevent[s] disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518 (1982). More to the point, it gives state prisoners an incentive to "seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *Id*. at 518–19. The petitioner must make the same federal claim in state and federal courts because "[t]he rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971).

To "fairly present" a federal claim, the petitioner must plead both a factual and legal basis for the claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). We examine a petitioner's pleadings for

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms

of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Id*. Meeting the task of fair presentation does not require reciting "chapter and verse" of constitutional law, but only "adequately appris[ing] the state courts of the constitutional theory to be relied upon at appellate review." *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987).

The Warden argues that Katt failed to do just that, depriving this court of jurisdiction. We agree as to Katt's Due Process claim. Katt offers only one sentence, accompanied by one citation, to show that he fairly presented a federal due process claim. In his Michigan Supreme Court brief, he wrote:

> Admission of the hearsay not only violated the rules of evidence, it also denied Mr. Katt's constitutional rights to due process and a fair trial. US Const, Ams V, VI, XIV; Const 1963, art 1, §§17, 20; Walker v Engle, 703 F2d 959, 962–963 (CA 6, 1983)(errors in evidentiary rulings under state law may deny a defendant's federal constitutional right to due process if they render the trial fundamentally unfair).

JA 23. Katt claims that this statement constituted "his sole assignment of error," but in his brief to the Michigan Supreme Court seeking leave to appeal, he actually grounded the assignment of error in state law:

> The trial judge committed reversible error in admitting under the catchall exception, MRE 803(24), and over defense objection the hearsay testimony of a social worker about what [D.D.] told her where the statement was inadmissible under the appropriate hearsay exception, the tender-years rule, MRE 803A.

JA 136 (all letters capitalized in original). In turn, the Michigan Supreme Court approached the question as one of state law: "The issue in this case is whether the trial court properly admitted under MRE 803(24) the victim's hearsay statement made to a social worker." *Katt*, 662 N.W.2d at 14; *see also People v. Katt*, 649 N.W.2d 72 (Mich. 2002) (table) (granting leave to appeal "limited to the issue of whether the trial judge erred in admitting testimony from the protective services worker under MRE 803(24)").

Our cases view Katt's isolated allusion to "constitutional rights to due process and a fair trial" as failing to afford the Michigan courts adequate notice that Katt intended to invoke the Due Process Clause. *See, e.g.*, *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (where a petitioner alleged that he had been deprived of "due process and a fair trial by an impartial jury" and cited the Sixth and Fourteenth Amendments, he had not "fairly presented" a federal claim to the state courts); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.") (internal citations omitted); *see also Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.").

And since Katt did not fairly present a due process claim to the Michigan courts, we analyze whether he can return to Michigan courts to exhaust his claim properly. *See Bell v. Bell*, 512 F.3d 223, 231 n.3 (6th Cir. 2008) (en banc). Given that a Michigan "defendant may not file an

application for leave to appeal from a judgment of conviction and sentence if the defendant has previously taken an appeal from that judgment by right," Mich. Ct. R. 7.205(F)(2), as Katt did, Michigan rules foreclose proper exhaustion at this stage, rendering Katt's claim procedurally defaulted. *See* Mich. Ct. R. 6.508(D)(3)(a). Katt makes no attempt to hurdle this barrier by a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). We therefore affirm the district court's judgment finding Katt's due process claim unexhausted and properly dismissed.

### B. *Confrontation Clause Claim*

As for Katt's Confrontation Clause claim, we assume, without deciding, that Katt "fairly presented" this because, regardless of exhaustion concerns, AEDPA deference dooms it. *See* 28 U.S.C. § 2254(b)(2) (authorizing a habeas court to deny "[a]n application for a writ of habeas corpus . . . on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

AEDPA mandates deferential review of state-court judgments affirming the conviction of a habeas petitioner, allowing this court to grant relief only if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

Nonetheless, Katt seeks de novo review of his Confrontation Clause claim. This escape from AEDPA deference is only possible if he fairly presented his claim, but the Michigan courts chose not to resolve it and made no decision to which we can defer. *See Vasquez v. Jones*, 496 F.3d 564, 569 (6th Cir. 2007). Our review of the Michigan decisions, however, confirms that the courts *did* adjudicate Katt's Confrontation Clause claim, albeit tailoring their discussion to reflect his brief supporting argument.

But because the Michigan Supreme Court ultimately resolved the claim in a footnote "with little analysis on the substantive constitutional issue," we apply modified AEDPA deference. *See Vasquez*, 496 F.3d at 569. Under this modified approach, "a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005); *see also* 28 U.S.C. § 2254(d)(1). Nevertheless, "review remains deferential." *Id.* at 467–68.

Katt seeks relief on the "unreasonable application" prong, contending that the Michigan courts identified the correct Confrontation Clause decisions but unreasonably applied them to the facts of his case. *See Williams v. Taylor*, 529 U.S. 362, 408 (2000). We disagree; far from unreasonably applying the Supreme Court's decisions, the Michigan courts were directly on point in rejecting Katt's Confrontation Clause challenge.

We note at the outset that although Katt asks for retroactive application of *Crawford v. Washington*, 541 U.S. 36 (2004), a decision post-dating his state court proceedings, the Supreme Court's decision in *Whorton v. Bockting*, 127 S. Ct. 1173 (2007), forecloses *Crawford* reliance. *See id.* at 1184 (holding that "*Crawford* announced a 'new rule' of criminal procedure and that this rule does not fall within the *Teague* exception for watershed rules").

Courts knew before *Crawford* that the Confrontation Clause "permits . . . the admission of certain hearsay statements against a defendant," *Maryland v. Craig*, 497 U.S. 836, 847 (1990), so long as they exhibit "adequate indicia of reliability," *Ohio v. Roberts*, 448 U.S. 56, 63 (1980). Either a "firmly rooted hearsay exception" or "a showing of particularized guarantees of trustworthiness" permit an inference of reliability. *Id.*

In upholding the "near miss" application of the state's residual hearsay rule, the Michigan courts primarily discussed *Idaho v. Wright*, 497 U.S. 805, 817 (1990). There, the Supreme Court held that the analogous federal residual hearsay exception is not a firmly rooted exception for Confrontation Clause purposes, but the Court then offered examples of "particularized guarantees of trustworthiness" that pave the path to admission: spontaneity and consistent repetition of the statement, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and the lack of a motive to fabricate. *Id*. at 821–22.

Both Michigan appellate courts found that the trial court thoroughly parsed the hearsay for "particularized guarantees of trustworthiness" before admitting Bowman's account of the interview

with D.D. Neatly tracking *Wright*'s suggested factors, the Michigan Court of Appeals summarized the facts that made Bowman's testimony reliable:

> As the trial court noted, D.D. voluntarily and spontaneously told Bowman about the sexual abuse. Notably, Bowman was present at D.D.'s school to question him about alleged physical abuse by his mother, and was only apprised of the sexual abuse when D.D. volunteered the information. Moreover, throughout his conversation with Bowman, D.D.'s recitation of the relevant facts concerning the sexual abuse remained consistent. D.D. also had personal knowledge of the sexual abuse of both himself and A.D. because he was present when it occurred. Bowman further stated that D.D. freely recounted the circumstances of the abuse without coaxing or leading questions on her part and that he frequently used terminology "unexpected of a child of similar age." Likewise, Bowman indicated that she is trained and proficient in interviewing suspected victims of child abuse and used open-ended, nonleading questions to glean information from D.D. Finally, as the trial court correctly observed, there is absolutely no indication in the record that substantiates defendant's claim that seven-year-old D.D. had a motive to fabricate defendant's involvement in these heinous offenses.

*Katt*, 639 N.W.2d at 823 (citations omitted).

Although Michigan's residual hearsay rule required "particularized guarantees of trustworthiness" as a matter of evidence law, then-existing Supreme Court Confrontation Clause precedent did not require any comparable showing "when a hearsay declarant is present at trial" and the defendant has "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor." *United States v. Owens*, 484 U.S. 554, 560 (1988). The Michigan Supreme Court therefore met the AEDPA test when it stated:

> If the declarant does testify at trial and is subject to cross-examination, corroborative evidence *may* be used to determine the trustworthiness of statements in criminal

> cases. The reason is that the Confrontation Clause is not implicated. *United States v. Owens*, 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

*Katt*, 662 N.W.2d at 24 n.12. That is, the trial court's procedure mitigated Confrontation Clause concerns when D.D. and A.D. testified because Katt could and did cross-examine them. The Michigan Court of Appeals suggested as much when it observed after its discussion of guarantees of trustworthiness: "[B]oth D.D. and his sister A.D. testified at trial and were subject to extensive cross-examination by defense counsel. Thus, 'the jury could weigh [D.D.'s] statement and accord the statement whatever weight the jury deemed appropriate.'" *Katt*, 639 N.W.2d at 824.

Katt argues that, even though they were present at trial, the children were reticent and gave nonresponsive answers, unconstitutionally depriving him of the opportunity for cross-examination. The Supreme Court rejected a similar argument in *Owens*, which arose from a prisoner who attacked his correctional counselor with a metal pipe. 484 U.S. at 556. The victim identified his attacker to an FBI agent, but by the time of the trial the victim was unable to remember the details of the assault. *Id.* The Court held that the Confrontation Clause allowed the FBI agent to testify to the hearsay identification because the defendant had at least the opportunity to cross-examine the declarant-victim, even though cross-examination might not be fruitful. *Id.* at 560.

We have since applied *Owens* to permit four adult witnesses to relate a child declarant's statements and fortify the child's own testimony. *Bugh v. Mitchell*, 329 F.3d 496, 501 (6th Cir. 2003). Because the child "was present at trial and subjected to cross-examination . . . an inquiry

into the reliability of the statements [was] not needed to satisfy the Confrontation Clause." *Id*. at 510.

Finally, Katt complains that he could not effectively cross-examine the children because they testified via two-way closed-circuit television and not face-to-face with Katt. But Katt stipulated to using this procedure, *see United States v. Kappell*, 418 F.3d 550, 553 (6th Cir. 2005), and never challenged it in the state courts or in the district court. The factual basis for this claim has not been exhausted in the state courts, and we do not consider habeas claims raised for the first time on appeal. *Seymour v. Walker*, 224 F.3d 542, 561 (6th Cir. 2000); *see also Vasquez*, 496 F.3d at 568. Even if we were to review the claim, no Supreme Court decisions available during the Michigan proceedings prohibited the procedure.

III

In light of our conclusions that the Michigan courts did not unreasonably apply then-existing Supreme Court Confrontation Clause decisions and that Katt procedurally defaulted his due process claim, we affirm the district court's dismissal of Katt's petition for habeas corpus.