# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2034

_____

Omar Yanez,                              *
                                         *
    Petitioner–Appellant,            *
                                         *  Appeal from the United States
                                         *  District Court for the
    v.                               *  District of Minnesota.
                                         *
State of Minnesota,                      *
                                         *
    Respondent–Appellee.             *

_____

Submitted: February 13, 2009
Filed: April 15, 2009

_____

Before LOKEN, Chief Judge, MELLOY and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Omar Yanez appeals the district court's[1] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(d). The district court issued a certificate of appealability for Yanez's claim that a Minnesota state court admitted out-of-court testimonial statements at his criminal trial in violation of the Sixth Amendment's Confrontation Clause. We affirm the denial of post-conviction relief.

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

I.

A state-court jury found Omar Yanez guilty of four counts of criminal sexual conduct in violation of Minnesota state law after he digitally penetrated his girlfriend's nine-year-old daughter, L.P., and forced her to have oral sex on several occasions. L.P.'s grandmother initially reported the abuse to the police based on a conversation she had with the child. While L.P. and her grandmother were at the police station, a deputy and a social worker conducted a videotaped interview with L.P. during which L.P. discussed Yanez's conduct in detail. On the tape, she clearly states that Yanez sexually abused her several times at various locations and describes specific instances of digital penetration and oral sex in graphic detail.

The State sought to introduce the videotape at trial under Minnesota Statute § 595.02 subdivision 3.[2] In accordance with subdivision 3(b)(i), the court admitted the

_____

[2] Minnesota Statute § 595.02, subdiv. 3, in relevant part, reads as follows:

> An out-of-court statement made by a child under the age of ten years . . . alleging, explaining, denying, or describing any act of sexual contact or penetration performed with or on the child or any act of physical abuse of the child . . . not otherwise admissible by statute or rule of evidence, is admissible as substantive evidence if:
>
> > (a) the court . . . finds . . . that the time, content, and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and
> >
> > (b) the child . . . either:
> >
> > (i) testifies at the proceedings; or
> >
> > (ii) is unavailable as a witness and there is corroborative evidence of the act; and

videotape on the condition that L.P. testify at trial.[3]  During the state-court proceedings, the State played the tape for the jury and then called L.P. to testify. L.P.'s testimony was vague, and she was unable to remember what Yanez did or the specifics of what she had told the police officer, the social worker, or her family members about Yanez.  L.P. did testify, however, that she remembered telling her aunt, grandmother, and the police something about Yanez, and while she did not remember what she had told them, she had told them the truth:

> Q:  "At some point did you tell your aunt . . . something about Omar?"
> A:  "Yeah."
> Q:  "And at some point did you also tell your grandma something about Omar?"
> A:  "Yeah."
> Q:  "Okay. And at some point did you also come to visit with the deputy and with the social worker?"
> A:  "Yep."
> Q:  "When you came to visit the deputy and the social worker did you talk to them about Omar?"
> A:  (Indiscernible)
> Q:  "Did you talk to them about Omar? . . ."
> A:  "Not really."

> (c) the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

[3] The State made a pretrial motion arguing that in the event L.P. was unable to testify, the court should determine that she was "unavailable" and admit the evidence under a different evidentiary provision.  Because the court ruled L.P. was competent and able to testify, and she did, in fact, testify at trial, the court did not rule on this motion.

Q: "Okay. Did you tell them about Omar and what you told your aunt?"
A: "Yeah."
Q: "And what did you tell them?"
A: "I don't remember."
Q: "Do you remember?"
A: "Nope."

. . . .

Q: "We're going back to when you were talking with the officer . . . And you were in there and you told them about what happened, is that right?"
A: "Yep."
Q: "Was that the truth what you told them?"
A: "Yep."

. . . .

Q: "Was what you told your grandma, was that the truth?"
A: "Yeah."
Q: "When you talked to your aunt . . . [w]as that the truth?"
A: "Yeah."

The most specific information that the State elicited from L.P. at trial regarding the abuse concerned whether Yanez had ever lain down beside L.P. at night. L.P. responded "yeah" but did not remember what Yanez did while in bed with her and was not able to recall how many times he lay with her.

On cross-examination, Yanez's counsel inquired further about L.P.'s memory of the events that she had described in the videotape. L.P. again conceded that she did not remember what she had told her grandmother, her aunt, or the police. The cross-examination thus revealed no further details regarding the videotape testimony or the sexual abuse. In response to further questioning aimed at exposing potential bias, L.P. testified that she did not want to move to Texas with Yanez, as the family had been

planning to do prior to the allegations. In an apparent attempt to discredit the grandmother and the motive behind her initial police report, Yanez's counsel asked about whether L.P. was aware of any conflict between Yanez and her grandmother. L.P. responded in the negative.

In addition to the videotape and L.P.'s testimony, both the police officer and the social worker who had conducted L.P.'s interview testified as to her statements during that meeting. The jury also heard testimony from L.P.'s grandmother and other family members who stated that L.P. had told them that Yanez had touched her. They also testified that Yanez had been found in bed with L.P. No physical exam was done at the time that L.P. was interviewed at the police station, and no medical exam was ever performed.

The jury convicted Yanez. He appealed, claiming that the trial court's admission of L.P.'s out-of-court testimonial statements violated the Confrontation Clause. The Minnesota Court of Appeals affirmed the conviction, identifying Crawford v. Washington, 541 U.S. 36 (2004), as controlling Supreme Court precedent. State v. Yanez, No. A04-276, 2005 WL 894649, at *2 (Minn. Ct. App. Apr. 19, 2005) (unpublished). The court found that because Crawford only applies when the declarant of the out-of-court statements is "unavailable" to testify, it was not applicable in the instant case. Id. at *2–3. Yanez had argued that L.P.'s inability to remember his acts or her own statements effectively rendered her "unavailable" to testify, but the court rejected this argument, holding that because L.P. "appeared at trial and was cross-examined," the Sixth Amendment was satisfied. Id. at *3. In sum, the court found that L.P.'s "inability to remember earlier statements or the events surrounding those statements d[id] not implicate the Confrontation Clause." Id. at *2. The Minnesota Supreme Court denied review.

Yanez filed a writ of habeas corpus in the U.S. District Court for the District of Minnesota based on the alleged violation of the Confrontation Clause and other issues. Yanez v. Minn., No.06-2890, 2007 WL 3138639 (D. Minn. Oct. 17, 2007)

-5-

(unpublished). The district court agreed with the state court's conclusion that Yanez's confrontation rights were not violated because L.P. appeared at trial, took the stand, and there was "no dispute that [Yanez's] attorney did cross-examine the victim." Id. at *1. The district court held that the fact that L.P. "was unable to remember salient facts does not render her an unavailable witness for purposes of a Confrontation Clause inquiry" under Crawford. Id. The district court issued a certificate of appealability as to the confrontation matter.

## II.

In habeas proceedings, "[w]e review the district court's . . . conclusions of law de novo." Toua Hong Chang v. Minnesota, 521 F.3d 828, 831 (8th Cir.), cert. denied, 129 S. Ct. 314 (2008). This court may grant habeas relief if the adjudication by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "A state court decision is contrary to clearly established Supreme Court precedent if 'the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" Greer v. Minnesota, 493 F.3d 952, 956 (8th Cir.), cert. denied, 128 S. Ct. 672 (2007) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "A state court decision is an unreasonable application of clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" Id. at 956–57 (quoting Williams, 529 U.S. at 407–08). "'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'" Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams, 529 U.S. at 412).

The Sixth Amendment's Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. To help safeguard that right, in Crawford, the Supreme Court held that out-of-court testimonial

statements[4] of an unavailable witness are admissible only if the defendant has had a prior opportunity to cross-examine that witness. Crawford, 541 U.S. at 52–54; Middleton v. Roper, 455 F.3d 838, 856 (8th Cir. 2006).

Yanez argues that the state court violated his confrontation right when it permitted the introduction of L.P.'s out-of-court statements by way of the videotape and third-party testimony. Yanez claims that despite the fact that L.P. physically took the stand, she was "unavailable" as a witness for constitutional purposes under clearly established Supreme Court precedent because she lacked sufficient memory to allow for "effective" cross-examination.

We agree with the district court's conclusion and find unpersuasive Yanez's argument that the state court's decision was an unreasonable application of clearly established Supreme Court precedent. While there has been no case before the Court with identical facts, in United Sates v. Owens, the Court squarely addressed the effect of a witness's faulty memory on cross-examination for purposes of the Sixth Amendment. United States v. Owens, 484 U.S. 554 (1988). In Owens, the Court clarified that the Sixth Amendment "includes no guarantee that every witness . . . will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion" and that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness' testimony." Owens, 484 at 558 (quotations omitted).

As discussed above, L.P. appeared for cross-examination at trial. And she was more than just physically present: she took the oath, took the stand, and was subject to questioning. See United States v. Spotted War Bonnet, 933 F.2d 1471, 1474 (8th Cir. 1991) ("Physical[] presen[ce] in the courtroom should not, in and of itself, satisfy

---

[4] Neither party disputes that these statements were "testimonial" in nature.

-7-

the demands of the Clause."). Through his cross-examination, Yanez had "a full and fair opportunity to probe and expose [testimonial] infirmities." Owens, 484 U.S. at 558 (quotation omitted). Yanez's cross-examination provided him an opportunity to remind the jury of L.P.'s inability to recall the abuse or any details related to the criminal acts and thus call into question her reliability. See Cookson v. Schwartz, 556 F.3d 647, 651 (7th Cir. 2009) ("[S]hortcomings in the witness' memory can be pointed out to the jury."); cf. Delaware v. Fensterer, 474 U.S. 15, 19 (1985) (per curiam) ("[A]n expert witness who cannot recall the basis for his opinion invites the jury to find that his opinion is as unreliable as his memory.").

Yanez also had the opportunity to expose potential bias or ulterior motives when he questioned L.P. about her resistance to moving to Texas or the possibility that there may have been a strained relationship between Yanez and L.P.'s grandmother. See United States v. Tail, 459 F.3d 854, 860 (8th Cir. 2006) ("The opportunity to expose 'possible biases, prejudices, or ulterior motives' of a witness, as 'they may relate directly to the issues or personalities in the case at hand,' is one important function of the right to confront witnesses." (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974))); cf. Spotted War Bonnet, 933 F.2d at 1474 (discussing how the cross-examination of the child witness "fit in well with counsel's attempt to show that the witness was essentially doing nothing more than repeating statements that had been previously gotten out of her by persistent and suggestive interrogation" despite the fact that the witness's ability to recall was limited). The fact that L.P. took the stand in front of the jury further allowed the jury to draw conclusions as to L.P.'s credibility based on her demeanor.

Ultimately, the jury credited L.P.'s testimony to the detriment of Yanez, but that does not mean that there was a constitutional defect in the proceedings or that Yanez's cross examination was not "effective." See Fensterer, 474 U.S. at 19–20; United States v. Boesen, 541 F.3d 838, 844 (8th Cir. 2008) ("[The Supreme Court] has emphasized that the Confrontation Clause guarantees an *opportunity* for effective

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (quotations omitted)); Spotted War Bonnet, 933 F.2d at 1474 ("Under Owens . . . a perfectly satisfactory cross-examination is not required by the Clause. . . .").

Despite Owens and Crawford, Yanez argues that several Supreme Court cases still support the proposition that forgetfulness on the part of a witness can render a cross-examination so ineffective as to make the witness unavailable in instances where the accused is unable to cross-examine a witness as to both the statement and the event itself. See Fensterer, 474 U.S. at 20; California v. Green, 399 U.S. 149, 168–69 (1970). In Green, however, the Court actually refused to address this issue, stating that "[w]hether [the witness's] apparent lapse of memory so affected [the accused's] right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case is an issue which is not ripe for decision at this juncture." Green, 399 U.S. at 168–69. The Court refused again in Fensterer. Fensterer, 474 U.S. at 20 ("We need not decide today the question raised but not resolved in Green."). And, as we discussed in Spotted War Bonnet, Owens clarified and narrowed much of the precedent upon which Yanez attempts to rely. In Owens, the Court revisited whether lapse of memory could implicate the Confrontation Clause and adopted the position set forth in a concurring opinion in Green, which was that "a witness'[s] inability to 'recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the [out-of-court] statement was given, does not have Sixth Amendment consequence.'" Spotted War Bonnet, 933 F.2d at 1474 (quoting Owens, 484 U.S. at 558) (internal quotation omitted). As a result, the governing Supreme Court precedent is arguably in direct opposition to Yanez's position on appeal.

Finally, in the cases that Yanez cites, the Court's discussion of the effect of memory loss was dicta, see Fensterer, 474 U.S. at 20; Green, 399 U.S. at 168–69, which cannot serve as the basis of a finding that the state court's decision was contrary

to or an unreasonable application of "clearly established federal law." See Carey, 549 U.S. at 74. At a minimum, whether there may ever be an instance in which memory loss can inhibit cross-examination to such a degree as to violate the Constitution is still an "open question." See id. at 76–77. Thus, the position that Yanez advocates is not "clearly established" for habeas purposes.

In conclusion, given the Court's holdings in Owens and Crawford, L.P.'s inability to recall the details of her prior statements or the incidents that led to those statements did not render the admission of the out-of-court testimonial statements constitutionally defective. The state court's decision was not an unreasonable application of clearly established Supreme Court precedent such that habeas relief is warranted. See Spotted War Bonnet, 933 F.2d at 1475; Cookson, 556 F.3d at 650–52 (withholding habeas relief under Owens and distinguishing cases where children are "fully capable of being cross-examined but whose memories are incomplete" from those where children are "too young" or "too frightened"); Katt v. Lafler, 271 F. App'x 479, 484 (6th Cir. 2008) (unpublished), cert. denied, 129 S. Ct. 1010 (2009) ("[The defendant] argues that, even though they were present at trial, the children were reticent and gave nonresponsive answers, unconstitutionally depriving him of the opportunity for cross-examination. The Supreme Court rejected a similar argument in Owens . . . ."); United States v. Kappell, 418 F.3d 550, 553 (6th Cir. 2005), cert. denied, 547 U.S. 1056 (2006) (upholding under Owens the introduction of out-of-court statements from children who testified at trial regarding sexual abuse despite the fact that at trial the children "often answered without providing details and were unresponsive to some questions"); Bugh v. Mitchell, 329 F.3d 496, 501 (6th Cir.), cert. denied, 540 U.S. 930 (2003) (relying on Owens to deny habeas relief when a court permitted out-of-court statements of a four-year-old victim as to sexual abuse when the victim took the stand but was only able to testify that "Daddy touched my privates . . . in mommy's bedroom" and every other answer was either non-verbal or non-responsive).

## III.

For the foregoing reasons, we affirm the district court's denial of Yanez's petition for habeas corpus.

_____