899 F.2d 1221
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lorenzo BENDINGFIELD, Petitioner-Appellee,
v.
Al C. PARKE, Warden, Kentucky State Reformatory, Frederic J.
Cowan, Attorney General of the Commonwealth of
Kentucky, Respondents-Appellants.
 No. 89-5462.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and LAWRENCE P. ZATKOFF*, District Judge.
 PER CURIAM.
 
 
 1
 Petitioner Lorenzo Bendingfield was convicted in a Kentucky state court of robbing a store. Bendingfield appealed to the Kentucky Supreme Court which affirmed the conviction. Bendingfield then sought habeas relief, and the district court concluded that Bendingfield had been denied the opportunity to confront a key witness against him, granting the writ. The Commonwealth has appealed.
 
 
 2
 On October 30, 1985, a food mart in Jefferson County, Kentucky (variously referred to as Thornton Oil and Thornton Food Mart) was robbed at gunpoint. The cashier identified the gunman as Jeffery Palmer, who confessed and implicated Bendingfield as his partner in the robbery. The cashier then made a positive identification of Bendingfield as having been in the store with Palmer at the time of the robbery.
 
 
 3
 The cashier testified that Bendingfield and Palmer remained in the store for some time before Palmer pulled a gun and instructed the cashier to lie down on the floor. The cashier saw Bendingfield look over the counter into the cash drawer, but he did not see which of the two men actually removed the money for the drawer.
 
 
 4
 Palmer agreed to testify against Bendingfield under a plea agreement. At trial, however, Palmer sought to invoke his fifth amendment right against self-incrimination to avoid testifying. The trial court ruled that Palmer had no such right in light of the plea agreement, and Palmer was sworn as a witness, despite his indication that he would decline to answer questions about this robbery. Palmer refused to answer most of the prosecution's questions. We set out the relevant portion of the direct examination:
 
 
 5
 Q: And then, did you give the police the name of Lorenzo Bendingfield as having committed the robbery of Thornton Oil with you?
 
 
 6
 A: Gave quite a few names.
 
 
 7
 Q: As to Thornton Oil, did you give the name of Lorenzo Bendingfield?
 
 
 8
 A: I could have.
 
 
 9
 Q: Okay, did you--was Lorenzo with you on the night of October 30, 1985 when you robbed Thornton Oil?
 
 
 10
 A: I refuse to answer the question.
 
 
 11
 Q: Based on what?
 
 
 12
 A: Because--well, before we even got started, I was telling you that I didn't want to answer none of these questions because I'm not--I would be hurting myself.
 
 
 13
 After Palmer was declared a hostile witness, the questioning continued:
 
 
 14
 Q: Do you recall agreeing to testify truthfully as to the involvement of Lorenzo Bendingfield in the robbery of Thornton Oil?
 
 
 15
 A: That's another question I refuse to answer.
 
 
 16
 Q: You refuse to answer whether or not you remember that?
 
 
 17
 A: Yes.
 
 
 18
 Q: Okay. And, on what basis do you refuse to answer that?
 
 
 19
 A: The same basis as before.
 
 
 20
 The prosecution then posed a series of leading questions in which details of the robbery were suggested, but Palmer also refused to answer the questions. Bendingfield's attorney then cross-examined Palmer, who responded to the questions, but none of them directly concerned the robbery in question. The questions posed by Bendingfield's attorney concerned Palmer's past record and his plea agreement:
 
 
 21
 Q: And, you wrapped up all three of those cases, didn't you?
 
 
 22
 A: Yes.
 
 
 23
 Q: And, in fact, on each of the three cases, PFO 1 [Persistent Felony Offender, First Degree] was dismissed, wasn't it?
 
 
 24
 A: Yes.
 
 
 25
 Q: And, PFO 1 carries ten years in the penitentiary, doesn't it? That's ten years to serve, isn't it?
 
 
 26
 A: Yes.
 
 
 27
 Q: And, you missed all that, didn't you? And, you pled guilty to ten years on the robberies, and ten years, I believe, on the burglaries, didn't you? So, you got a total of twenty years, isn't that correct?
 
 
 28
 A: Yes.
 
 
 29
 Q: Pretty sweet deal, wasn't it?
 
 
 30
 A: Yeah.
 
 
 31
 The prosecution then called a police detective who testified that she was present when Palmer first implicated Bendingfield, as well as when Palmer made a videotaped statement implicating Bendingfield. The prosecution then moved to introduce the relevant portion of the videotape into evidence. The motion was granted over defense counsel's objection, and the videotape was presented to the jury. It seems to be conceded by all parties that Palmer's taped statement clearly implicated Bendingfield in the commission of the crime charged. Following the playing of the videotape, Palmer indicated that he would not respond to questions by the prosecution.
 
 
 32
 Bendingfield's counsel then again cross-examined Palmer:
 
 
 33
 Q: Mr. Palmer, are you refusing to testify in regards to the Thornton Food Mart case?
 
 
 34
 A: Yes.
 
 
 35
 Q: Are you refusing to testify in regards to other matters?
 
 
 36
 A: Yes.
 
 
 37
 Q: Are you refusing to testify in regards to the plea agreement?
 
 
 38
 A: Yes.
 
 
 39
 .............................................................
 
 
 40
 ...................
 
 
 41
 * * *
 
 
 42
 Q: You're almost an expert witness, aren't you?
 
 
 43
 A: Yes.
 
 
 44
 .............................................................
 
 
 45
 ...................
 
 
 46
 * * *
 
 
 47
 Q: And despite being let out on parole in January of this year, you've just recently been convicted of a total of seventeen felonies. Isn't that correct?
 
 
 48
 A: Yes.
 
 
 49
 .............................................................
 
 
 50
 ...................
 
 
 51
 * * *
 
 
 52
 Q: Finally, are you refusing to testify in regards to anything in regards to [sic] the Thornton Food Mart?
 
 
 53
 THE COURT: That's been asked and answered.
 
 
 54
 Bendingfield was convicted and sentenced to twenty years as a persistent felony offender. He filed a direct appeal with the Kentucky Supreme Court, raising the same issues as in his later petition for habeas corpus relief. The Kentucky Supreme Court rejected Bendingfield's contentions, stating:
 
 
 55
 It is not true that appellant was denied confrontation with a witness against him because both Palmer and the police detective testified at trial and both were subjected to cross-examination, and each of them answered every question posed to them on cross-examination.
 
 
 56
 The district court held that Bendingfield was denied his rights based on the following rationale:
 
 
 57
 In the present case, Palmer refused to answer any questions concerning the matters in issue in the case, these being the robbery at Thornton Food Mart and petitioner's participation or lack thereof. There had been no opportunity for cross-examination at the plea change proceedings that were the subject of the videotape played for the jury. Palmer's prior statements, directly accusing petitioner of committing the crime charged, were presented to the jury without petitioner's ever having the opportunity to test or challenge their accuracy, completeness, or credibility. We must conclude that the witness Palmer was not available for full and effective cross examination. As a result, use of his testimony, including his prior statement, violated petitioner's rights under the Confrontation Clause.
 
 
 58
 "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. A state court's factual determinations are to be treated as presumptively correct in a federal habeas corpus proceeding. 28 U.S.C. Sec. 2254(d); Sumner v. Mata, 449 U.S. 539 (1981). A federal court, on the other hand, is not precluded from reviewing "a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case." Cuyler v. Sullivan, 446 U.S. 335, 342 (1980). The district court was not obliged to treat as presumptively correct the finding of the Kentucky Supreme Court that the petitioner was not denied confrontation with a witness.
 
 
 59
 The Supreme Court has noted that there is a "partial (and somewhat indeterminate) overlap between the requirements of the traditional hearsay rule and the Confrontation Clause." United States v. Owens, 108 S.Ct. 838, 843 (1988); see also California v. Green, 399 U.S. 149, 155-56 (1970). In both hearsay exception and Confrontation Clause determinations,
 
 
 60
 limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination ... no longer exists.
 
 
 61
 Owens, 108 S.Ct. at 844.
 
 
 62
 The Commonwealth argues that Bendingfield was not deprived of meaningful cross-examination and claims support on two bases. First, defense counsel's cross-examination did elicit the fact that Palmer has a lengthy criminal record, and that his motivation in implicating Bendingfield (and others) was his desire to minimize his own prison sentence. To this extent, then, the cross-examination was meaningful and helpful.
 
 
 63
 Second, the Commonwealth points out that Palmer, although unresponsive to questions from the prosecution, answered every question put to him by defense counsel. On the second cross-examination (following the playing of the videotape), defense counsel began by asking Palmer if he was refusing to testify about the Thornton case, and Palmer answered in the affirmative. Defense counsel also asked if Palmer was refusing to testify about his plea agreement, and about other cases in which he had testified on behalf of the Commonwealth, and Palmer again answered in the affirmative. When defense counsel actually posed questions to Palmer about his testimony in other cases, nevertheless, Palmer was responsive. As the Kentucky Supreme Court noted, there was no specific question put to Palmer on cross-examination about appellant's participation in the crime.
 
 
 64
 We are persuaded that Bendingfield was not denied an opportunity meaningfully to cross-examine Palmer. Petitioner's counsel did not actually attempt to cross-examine Palmer concerning Bendingfield's alleged participation in the crime. Neither did Bendingfield's attorney ask if Palmer had falsely implicated petitioner just to improve his own position.
 
 
 65
 To the extent defense counsel actually cross-examined Palmer, the cross-examination was effective (in painting Palmer as a repeat offender with the incentive to lie). We are not persuaded that Bendingfield was denied the right to confront Palmer under all the circumstances. Palmer was a reluctant, and even a hostile, witness as far as giving any assistance to the prosecution at Bendingfield's trial.
 
 
 66
 We accordingly REVERSE the grant of habeas corpus relief.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation