Filed 11/29/23  P. v. Tavarez CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE TRINIDAD TAVAREZ,<br><br>    Defendant and Appellant. | G061286<br><br>(Super. Ct. No. 18CF1732)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Jose Trinidad Tavarez of two counts of committing a lewd act on a child under 14 years of age (hereafter lewd conduct) (Pen. Code, § 288, subd. (a); counts 1 & 4 )[1] and one count of sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b); count 3).[2] The jury also found true the allegation Tavarez engaged in substantial sexual conduct with a child under the age of 14 years in the commission of the lewd conduct offense in count 4, rendering him ineligible for probation. (§ 1203.066, subd. (a)(8).) The court found two aggravating factors had been proven beyond a reasonable doubt.[3] The court imposed an indeterminate term of 15 years to life for the sexual penetration conviction in count 3 and a consecutive determinate term of six years for the lewd conduct conviction in count 1; the court imposed six years for the lewd conduct conviction in count 4 but stayed execution of this sentence under section 654.

The child, L.F., was four years old when Tavarez committed the offenses and eight years old when she testified at trial. Over the defense's objection, the court admitted under Evidence Code section 1360 statements L.F. made the day after the offenses, in which she described the sexual abuse to her mother and the police. When L.F. testified at trial, she did not remember details of the abuse and did not know or recognize Tavarez. She remembered talking to her mother about the abuse "[a] long time ago" and testified she told her mother the truth, but she could not recall what she told her mother and did not remember talking to anyone else about it.

---

[1]  All further statutory references are to the Penal Code unless otherwise stated.

[2]  Tavarez was charged with kidnapping for child molestation (§ 207, subd. (b)) in count 2. The court granted the defense motion of acquittal pursuant to section 1118.1 as to this charge.

[3]  The court found the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and Tavarez took advantage of a position of trust and confidence to commit the offense (*id.*, rule 4.421(a)(11)).

On appeal, Tavarez contends: (1) the court abused its discretion by admitting L.F.'s out-of-court statements to her mother and the police under Evidence Code section 1360; (2) the admission of L.F.'s police interview violated his rights to confrontation because he was unable to effectively cross-examine her given her lack of recollection; (3) his conviction for lewd conduct in count 4 must be stricken as a lesser included offense of his sexual penetration conviction in count 3; and (4) the abstracts of judgment must be corrected to accurately reflect the court's oral pronouncement of judgment. We agree the abstracts of judgment must be corrected, but we reject Tavarez's other contentions and affirm the judgment.

FACTS

On June 17, 2018, M.C. (Mother) took her three youngest daughters, including four-year-old L.F., with her to church. The church had a celebration that evening following services. During the celebration, people were primarily congregating and socializing in an area next to the church.

Surveillance cameras from the neighboring building recorded Tavarez, who was also a member of the church, distributing bags of chips to the children. In the surveillance video,[4] Tavarez is later seen holding and carrying L.F. in an area out of the view of other adults at the celebration. He pulls her closer and places her head near his, as if kissing her on the cheek. Tavarez is next seen walking back toward the celebration with L.F. walking with him. He enters the church and L.F. follows him inside. There is a lapse in the video for a couple of minutes. Then, the video shows Tavarez walking back from his white van, which was parked in a lot across the street from the church; L.F. is with him.

---

[4] The surveillance cameras were motion activated and recorded clips of various lengths, which the prosecution stitched together into a video that was admitted at trial.

3

After the church celebration, when Mother and her three daughters returned home around 9:00 p.m., L.F. repeatedly asked for a bath, which was unusual. Mother put L.F. to bed without giving her a bath.

The next day, M.T., Mother's eldest daughter, overheard L.F. tell their sister that "Hermano Jose" at the church pulled down her underwear and stuck his finger in her private part. Tavarez was the only person M.T. knew as Hermano Jose at the church. M.T. went and talked to Mother.

Mother asked L.F. to tell her what happened. Crying, L.F. told Mother "Jose" pulled down her panties, put his finger in her private part, sucked on his finger, pulled down his zipper, and put his mouth on her private part. L.F. pointed to the area between her legs when she said he put his finger in her private part. Mother inquired who had done this, and L.F. said it was the man who had given her a bear. Mother remembered Tavarez had given L.F. a stuffed animal about a month earlier.

Mother was unable to understand everything L.F. was trying to tell her. Mother primarily spoke Spanish, and L.F. primarily spoke English. L.F. also had a speech impediment, but Mother and L.F. were generally able to communicate with each other. L.F. often used hand gestures to communicate with Mother, as she did in this conversation.

Mother immediately took L.F. to a medical facility to have her examined by a doctor. At the doctor's office, L.F. said "he" pulled down her pants and put his fingers down there; she put her hand on top of her vaginal area while saying this. Mother told the medical facility's staff "Jose" touched L.F.; L.F. did not say "Jose" did it. The doctor's office called the police.

Officer Jeffrey Grant interviewed L.F. at her home that evening, with the assistance of Detective Jorge Garcia.[5] Early in the interview, when Grant asked L.F. a

_____

[5] The interview was recorded on Detective Garcia's body-worn camera, and the recording was played for the jury, over defense objections.

preliminary question about what she did at church, L.F. responded, "The big boy touched me right here and put it in his mouth." When asked for clarification, she said he "put his finger in here and in his mouth." Officer Grant asked L.F. where she was touched; L.F. pointed between her legs and said it was underneath her clothing. She indicated he used his right hand and identified which finger he used. She told the officers, "He took his zipper off." She also said, "he pulled his pants off" but not down to his knees or ankles. As Grant was trying to get clarification about the pants, L.F. said he took her to his car, which she described as "Big." When Grant asked L.F. if it was a truck, she responded affirmatively and said it was black. At first L.F. denied he kissed her, then she stated he kissed her on the cheek. She said after the incident, he went back to the church and gave her chips.

From L.F.'s responses, Grant understood the incident occurred the day before at church. Grant asked L.F. if she knew the person's name. She said she did, and he went to church. Grant asked what the man's name was, but the officers could not understand L.F.'s response. She told them it was "the boy" at "church." She described his facial hair, the color of his hair, his height, and the language he spoke.

After the officers spoke to L.F., they told Mother L.F. had accused a person named "Marsed" as the person who touched her. Mother repeated the name back to the officers and told them L.F. was saying Jose.

M.T. also spoke to the officers. In describing L.F.'s initial disclosure, M.T. did not tell the officers she overheard L.F. talking to her sister; instead, she told the officers L.F. ran up to her and said someone pulled down her underwear.

After the police interviewed L.F., she was taken to a hospital where a nurse conducted a forensic examination and swabbed her genitalia for DNA. The nurse did not see injuries to L.F.'s genitalia and could neither confirm nor negate sexual abuse.

The police arrested Tavarez, and he agreed to give them a buccal swab. Tavarez was very involved in the church Mother attended. Church congregants called the

5

male members brothers, and Tavarez was referred to as "Hermano Jose" at the church. Tavarez and the pastor were the only two men at the church named Jose. Tavarez had a white van, which the pastor allowed him to park in the church parking lot at night so Tavarez could serve as security for the church.

The swabs obtained by the nurse during the forensic examination of L.F. were tested for the presence of semen and amylase, an enzyme present in saliva and other bodily fluids. No sperm cells were found. Amylase was detected in swabs taken of L.F.'s mons pubis, vulva, and her thighs.

Testing of the sample from L.F.'s mons pubis showed the presence of her DNA and that of another contributor. The testing did not yield a full DNA profile for the contributor, but based on the partial profile obtained, Tavarez could not be excluded as the contributor. In initial testing, only L.F.'s DNA was found in the swab from her vulva. Subsequent testing was performed of a DNA extract of the vulva sample, using a test that specifically targets male DNA. A partial male profile was obtained. Tavarez's profile was consistent with this partial male profile, and he could not be eliminated as a possible source of the DNA.

DISCUSSION

I.

ADMISSION OF L.F.'S STATEMENTS UNDER EVIDENCE CODE SECTION 1360

Tavarez contends the court abused its discretion by admitting L.F.'s out-of-court statements to Mother and the police under Evidence Code section 1360. We disagree.

A. *Proceedings Below*

Prior to trial, Tavarez sought the exclusion of L.F.'s out-of-court statements to Mother, the police, and a social worker, who was part of the Child Abuse Services

6

Team (CAST). The prosecutor argued these statements were admissible under Evidence Code section 1360. The court conducted an Evidence Code section 402 hearing outside the jury's presence, wherein Mother testified concerning L.F.'s disclosure to her. The court also reviewed the videorecording of L.F.'s CAST interview. The court concluded L.F.'s CAST interview was not admissible under Evidence Code section 1360 but ruled L.F.'s statements to Mother and the police were admissible under the statute.

*B. The Court Properly Admitted L.F.'s Statements Under Evidence Code Section 1360*

Evidence Code "[s]ection 1360 creates a limited exception to the hearsay rule in criminal prosecutions for a child's statements describing acts of child abuse or neglect, including statements describing sexual abuse. [Citations.] [Evidence Code s]ection 1360 safeguards the reliability of a child's hearsay statements by requiring that: (1) the court find, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances surrounding the statement(s) provide sufficient indicia of reliability; (2) the child either testifies at the proceedings, or, if the child is unavailable to testify, other evidence corroborates the out-of-court statements; and (3) the proponent of the statement gives notice to the adverse party sufficiently in advance of the proceeding to provide him or her with a fair opportunity to defend against the statement. [Citations.] We review a trial court's admission of evidence under [Evidence Code] section 1360 for abuse of discretion." (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367, fn. omitted; accord, *People v. Mitchell* (2020) 46 Cal.App.5th 919, 927.)

Tavarez challenges the court's finding the time, content, and circumstances surrounding L.F.'s statements to Mother and the police provided sufficient indicia of reliability within the meaning of Evidence Code section 1360. Discussing the reliability requirement, the California Supreme Court has "explained: 'The nonexhaustive list of factors that the United States Supreme Court has cited as relevant to the reliability of hearsay statements made by child witnesses in sexual abuse cases are (1) spontaneity and

7

consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate.' [Citation.]" (*In re Lucero L.* (2000) 22 Cal.4th 1227, 1239, citing *Idaho v. Wright* (1990) 497 U.S. 805, 821–822.) A "child's ability to understand the duty to tell the truth and to distinguish between truth and falsity is also a factor in determining the reliability of his or her extrajudicial statements." (*In re Cindy L.* (1997) 17 Cal.4th 15, 30.) However, there is "no 'mechanical test for determining "particularized guarantees of trustworthiness."'" (*People v. Eccleston* (2001) 89 Cal.App.4th 436, 443.) "[T]he unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." (*Idaho v. Wright, supra*, 497 U.S. at p. 822.)

Here, the court did not abuse its discretion in finding the time, content, and circumstances of L.F.'s statements to Mother and the police, describing the sexual abuse, provided sufficient indicia of reliability. Regarding the timing, L.F. made these statements to Mother and the police the day after the incident occurred and made them within a few hours of each other. Both her disclosure to Mother and her statements to the police occurred in her home, a place where she would feel safe and at ease.

Evaluation of the reliability factors identified by the United States Supreme Court leads to the conclusion the court properly found L.F.'s statements to Mother and the police were sufficiently reliable. Although L.F.'s statements to Mother and the police were not spontaneous, she was consistent in her description of the sexual acts. She made similar statements to her sisters and the social worker. However, in her separate statements to the police and the social worker, there were inconsistencies as to some details, i.e., the type and color of the vehicle in which the sexual abuse occurred. Nevertheless, on several separate occasions, L.F. described the sexual abuse, and each time, she was consistent in her description of Tavarez's actions of digitally penetrating her. This first factor therefore supports the court's finding of reliability. (*People v. Eccleston, supra*, 89 Cal.App.4th at p. 446 [finding of reliability supported by fact child's

8

"general outline of abuse" remained constant]; *People v. Brodit* (1998) 61 Cal.App.4th 1312, 1330 [consistent repetition to at least five adults suggested reliability].)

There is no evidence concerning L.F.'s mental state at the time she made the statements to indicate they were unreliable. Thus, the second factor also supports admission of the evidence. L.F. was able to communicate and express herself at the time she made the statements. Although both Mother and the police officers had difficulty understanding what L.F. was saying at times, L.F. was able to demonstrate what happened to help them understand. She was also able to indicate on a diagram where Tavarez had touched her.

The third and fourth factors also support the court's finding of reliability. L.F.'s description of Tavarez's actions reflected knowledge of a matter beyond the ordinary familiarity of a four-year-old child. (See *People v. Brodit, supra*, 61 Cal.App.4th at pp. 1318, 1330 [nine-year-old child's "description of sexual acts showed a knowledge of such matters far beyond the ordinary familiarity of a child of her age"].) And lastly, L.F. had no motive to fabricate her accusations against Tavarez.

There was also evidence L.F. was able to distinguish between the truth and a lie. Prior to ruling on the admissibility of L.F.'s statements to Mother and the police, the court had reviewed the recording of L.F.'s CAST interview. At the beginning of her CAST interview, L.F. demonstrated she knew the difference between the truth and a false statement. Grant's attempt during the police interview to question L.F. to determine her ability to understand the difference between the truth and a lie was not illuminating. However, L.F.'s statements during the interview reflected an understanding of the difference. L.F. corrected Grant when he incorrectly stated Tavarez had pulled down her pants. This also weighs in favor of the reliability of her statements.

The record indicates the court understood the analysis it needed to perform in determining whether to admit the evidence under Evidence Code section 1360. The court excluded L.F.'s CAST interview after finding the time, content, and circumstances

9

of that statement did not provide sufficient indicia of reliability. As for the admissibility of L.F.'s statements to Mother and the police, we conclude the court properly admitted the evidence under Evidence Code section 1360.

## II.
### TAVAREZ'S CONFRONTATION RIGHTS

Tavarez argues his right to confrontation, guaranteed by the United States and California constitutions, was violated because L.F. was unavailable for effective cross-examination. Within this argument, he makes two contentions. First, he asserts L.F.'s police interview was testimonial hearsay and should have been excluded after it became clear L.F. could not be effectively cross-examined about the incident. Second, he asserts L.F.'s "trial testimony made in response to the prosecutor's leading questions should have been stricken." We conclude there was no violation of Tavarez's confrontation rights.

### A. Background

L.F. was four years old when the incident occurred and she made statements describing the abuse to her sisters, Mother, the police, and others. She was eight years old by the time of trial. In a hearing outside the presence of the jury, the court found L.F. competent to testify, over defense objection. In testifying before the jury, L.F. answered the prosecutor's preliminary questions with relative ease, giving her age, her grade in school, favorite school subject, naming her sisters, and placing them in order from eldest to youngest. When the prosecutor asked L.F. questions to test her understanding of the truth and a falsity, L.F.'s responses demonstrated she understood the difference. L.F. promised to only say things that were true in her testimony. She also promised to tell the prosecutor if she did not understand something the prosecutor said or

10

confused her, and if she did not remember something, she promised to say she did not remember.

When the prosecutor questioned L.F. about the incident and talking to the police, L.F. testified she did not remember what happened and did not remember talking to the police. She did not remember anything bad happening at church or going to a doctor's office where there were police officers. She did not know Tavarez and said she had never seen him before.

L.F. remembered telling Mother something bad happened to her at church but did not remember what she told Mother. She talked to Mother about something bad happening, but she did not remember what the bad thing was. The prosecutor asked L.F., "Do you remember your mom telling you to let her know if anyone ever touches your body?" The defense objected on the grounds the question was leading and called for hearsay. The court overruled the objection, and L.F. responded, "Yes."

L.F. remembered telling Mother someone touched her body, but she did not remember what she told Mother about it. She did not remember who touched her body but remembered it was an adult male. She did not remember where she was when it happened. After the man touched her, L.F. told Mother and told her the truth of what happened. She did not remember talking to anyone else after she told Mother about it. When the prosecutor asked if the man touched "a private area" of her body, L.F. responded affirmatively. In response to further questions, she identified the area where a person goes pee-pee as a private area. L.F. said she did not know what that area was called. The prosecutor pointed to the area between the prosecutor's legs and asked L.F. if the man touched her in that area, and L.F. said, "Yeah." L.F. did not know how or when he touched that area. She knew it happened, "A long time ago."

Defense counsel did not attempt to cross-examine L.F.

After L.F.'s testimony, defense counsel moved to strike all testimony "reciting or summarizing" L.F.'s statements "about being touched at the church" on the

11

ground these statements were hearsay and their admission violated the confrontation clause. Defense counsel argued L.F. testified she had no memory of the incident or talking about it to anyone other than Mother, and therefore, he could not cross-examine her on her out-of-court statements. The court invited defense counsel to question L.F., but counsel declined, stating: "I think it's clear she doesn't remember. There's nothing I can ask her on that." The court denied the motion.

B. *Tavarez's Rights to Confrontation Were Not Violated*

Tavarez contends admission of the recording of L.F.'s police interview violated his confrontation rights because he did not have a meaningful opportunity to cross-examine her. We disagree.

Under the Sixth Amendment's confrontation clause, which is applicable to the states through the Fourteenth Amendment, an accused has the right "to be confronted with the witnesses against him." (U.S. Const., 6th & 14th Amends.) Similarly, the California Constitution provides a right to confrontation. (Cal. Const., art. I, § 15.) When the federal confrontation clause applies, it bars the use of a testimonial hearsay statement against a criminal defendant when the declarant is unavailable at trial, unless the defendant had a prior opportunity to cross-examine the declarant. (*Crawford v. Washington* (2004) 541 U.S. 36, 59, 68–69 (*Crawford*); accord, *People v. Lopez* (2012) 55 Cal.4th 569, 580–581.)

Here, there is no dispute L.F.'s videotaped statement to the police constitutes testimonial hearsay for Sixth Amendment purposes. (See *Davis v. Washington* (2006) 547 U.S. 813, 822 [holding statements are testimonial when made in course of police interrogation under circumstances "objectively indicat[ing] . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution" and there is no "ongoing emergency"].) However, the admission of this evidence did not violate Tavarez's confrontation rights because L.F.

12

testified at trial and could be cross-examined regarding her testimonial hearsay statements.

The California Supreme Court explained: "[A]s the United States Supreme Court has stated, 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements.' [Citation.] This is true even if the witness cannot recall the statement. 'Defendant contends there can be no constitutionally effective cross-examination when the witness cannot recall the facts related in the hearsay statement. [Citations.] But the [United States Supreme Court] has squarely rejected that contention, concluding that "when a hearsay declarant is present at trial and subject to unrestricted cross-examination," "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness'[s] demeanor satisfy the constitutional requirements," notwithstanding the witness's claimed memory loss about the facts related in the hearsay statement. [Citation.] Nothing in *Crawford* casts doubt on the continuing vitality of [*United States v.*] *Owens* [(1988) 484 U.S. 554 (*Owens*).]'" (*People v. Sanchez* (2019) 7 Cal.5th 14, 42.)

In *Owens, supra*, 484 U.S. 554, a federal correctional counselor was attacked and beaten with a metal pipe. (*Id*. at p. 556.) As a result of his injuries, his memory was severely impaired. (*Ibid*.) When interviewed by law enforcement about three weeks after the attack, the victim was able to describe the attack, named the defendant as his attacker, and identified him from an array of photographs. (*Ibid*.) At trial, the victim was able to describe some of the attack. Although he remembered identifying the defendant as his attacker when he was interviewed, he admitted he could not remember seeing his assailant. (*Ibid*.) The high court framed the issue as "whether . . . the Confrontation Clause of the Sixth Amendment . . . bars testimony concerning a prior, out-of-court identification when the identifying witness is unable, because of memory loss, to explain the basis for the identification." (*Id.* at pp. 555–556.)

13

The United States Supreme Court concluded there was no confrontation clause violation.  (*Owens, supra*, 484 U.S. at p. 564.)  The court explained:  "'[T]he Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'"  (*Id*. at p. 559.)  The court continued:  "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." (*Id.* at p. 560.)  While the *Owens* court acknowledged the "dangers associated with hearsay," it concluded an inquiry under the confrontation clause is not "called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination."  (*Ibid.*) The court explained, "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions."  (*Id.* at p. 561.)

Here, as in *Owens* and *Sanchez*, L.F. was subject to cross-examination as she was placed on the stand under oath, found competent to testify, and responded to the questions posed to her.  She did not refuse to answer any questions.  Thus, Tavarez's reliance on *People v. Perez* (2016) 243 Cal.App.4th 863 and *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932 is misplaced as those cases concern recalcitrant witnesses who appeared at trial but refused to answer some or all of the questions presented to them.  (*People v. Perez, supra*, 243 Cal.App.4th at pp. 883, 886; *People v. Giron-Chamul, supra*, 245 Cal.App.4th at pp. 961–969.)

Tavarez asserts L.F.'s testimony on the stand affirming the prosecutor's leading questions should have been stricken.  During L.F.'s direct examination, defense counsel objected to only one question as leading—the prosecutor's question whether L.F. remembered Mother telling her to let Mother know if anyone touched L.F.'s body.  The court overruled the objection.  We do not view this question by the prosecutor or L.F.'s

14

testimony after this question as creating "an illusion of adverse testimony that could not be cross-examined" as Tavarez contends.

We need not determine whether Tavarez's confrontation clause claim is precluded by his counsel's failure to attempt to cross-examine L.F., as argued by the Attorney General, because we conclude Tavarez's confrontation rights were not violated, based on *Sanchez* and *Owens*. We reject Tavarez's claim his confrontation rights were violated by the admission of L.F.'s police interview or her trial testimony in response to the prosecutor's leading question.

## III.

### LEWD CONDUCT IS NOT A LESSER INCLUDED OFFENSE OF SEXUAL PENETRATION OF A CHILD

Tavarez contends his lewd conduct conviction (§ 288, subd. (a)) in count 4 must be stricken because it is a lesser included offense of his conviction for sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b)) in count 3 and both convictions were based on the same conduct. The Attorney General contends Tavarez was properly convicted of both offenses because lewd conduct is not a necessarily included offense of sexual penetration. We agree with the Attorney General.

### A. Applicable Law

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged."'" (*People v. Reed* (2006) 38 Cal.4th 1224, 1226.) "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.'" (*Id.* at p. 1227.) "'[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a

15

lesser included offense within the former.' [Citation.] In such cases, a defendant may not be convicted of both the greater and the lesser offense." (*People v. Milward* (2011) 52 Cal.4th 580, 585.) When prohibited multiple convictions occur, the conviction for the lesser included offense will be set aside. (*People v. Lopez* (2020) 9 Cal.5th 254, 270.)

In determining whether one offense is a necessarily included offense of another, the statutory elements test is used. (*People v. Reed, supra*, 38 Cal.4th at p. 1231.) "'"Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former."'" (*People v. Lopez, supra*, 9 Cal.5th at pp. 269–270.)

*B. Analysis*

Tavarez was convicted in count 3 of violating section 288.7, subdivision (b), which states: "Any person 18 years of age or older who engages in . . . sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony . . . ." Section 289 defines "'[s]exual penetration'" as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) The offense of sexual penetration of a child is a specific intent crime as it requires the act "'be done with the intent to gain sexual arousal or gratification or to inflict abuse on the victim.'" (*People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167.)

Tavarez was convicted in count 4 of violating section 288, subdivision (a), which states in relevant part: "[A] person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of

16

14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." Section 288, subdivision (a) "requires proof of 'the *specific intent* of arousing, appealing to, or gratifying the lust of the child or the accused.'" (*People v. Warner* (2006) 39 Cal.4th 548, 556.)

The intent elements of section 288.7, subdivision (b) and section 288, subdivision (a) are different in that section 288.7, subdivision (b) criminalizes sexual penetration for the purpose of abuse; section 288, subdivision (a) does not include the intent to inflict abuse. Thus, a defendant could commit an act of sexual penetration of a child with the intent to abuse in violation of section 288.7, subdivision (b) without committing an act of lewd conduct in violation of section 288, subdivision (a). And a defendant could commit an act of lewd conduct without committing an act of sexual penetration of a child.

Tavarez contends the intent elements of the two offenses are the same. He asserts "[s]exual abuse is a synonym of sexual arousal and sexual gratification and not a separate concept from lewd touching." To support his argument, he cites to section 11165.1, which defines "'sexual abuse'" as the term is used in the Child Abuse and Neglect Reporting Act. (§§ 11164–11174.31.) Section 11165.1 states "'sexual abuse' means sexual assault" and provides multiple examples of conduct that qualifies as sexual assault. (*Id.*, subds. (a), (b)(1)–(5).) Tavarez focuses on the example that states "'sexual assault'" includes "[t]he intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks . . . of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification . . . ." (*Id.*, subd. (b)(4).) Another example provided by the statute, however, does not require any intent; it indicates "'sexual assault'" is "[i]ntrusion by one person into the genitals or anal opening of another person, including the use of an object for this purpose . . . ." (*Id.*, subd. (b)(3).) Thus, the definitions of sexual assault in the Child Abuse and Neglect Reporting Act do

17

not aid Tavarez's argument as even under its examples of sexual assault, a person can commit sexual assault or abuse without a purpose of sexual arousal or gratification. Tavarez does not persuade us the language concerning the required intent element in section 288, subdivision (a) should be expanded to include abuse.

Tavarez was properly convicted of both sexual penetration of a child in count 3 and lewd conduct in count 4.

## IV.

### THE ABSTRACTS OF JUDGMENT MUST BE CORRECTED

At sentencing, the court imposed a determinate six-year term on Tavarez's lewd conduct conviction in count 1. For Tavarez's conviction for sexual penetration of a child in count 3, the court imposed an indeterminate term of 15 years to life and ordered it to run consecutive to the determinate sentence in count 1. The court imposed a determinate midterm sentence of six years on the lewd conduct conviction in count 4, but the court stayed the term under section 654 because it was based on the same conduct as the conviction in count 3. The court stated it would not impose the court operations fees or criminal conviction assessments.

The abstract of judgment for the determinate prison commitment states the court imposed and stayed a consecutive full-term sentence on count 4. Similarly, the court's minutes for the sentencing hearing state the court imposed a consecutive full-term sentence on count 4. The abstract of judgment for the indeterminate prison commitment reflects the imposition of a $120 court operations fee under section 1465.8 and a $90 criminal conviction assessment under Government Code section 70373.

The parties agree the abstracts of judgment must be corrected because they do not accurately reflect the court's judgment. We agree and direct the court to amend the abstracts of judgment by: (1) *deleting* the notation the sentence on count 4 was imposed "consecutive full term" (capitalization omitted) on the abstract of judgment for

18

the determinate prison commitment; and (2) *deleting* the notations the court imposed a $120 court fee under section 1465.8 and a $90 criminal conviction assessment under Government Code section § 70373 on the abstract of judgment for the indeterminate prison commitment. (*People v. Jones* (2012) 54 Cal.4th 1, 89 [appellate court has inherent power to order correction of errors in the abstract of judgment]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185–187 [same].)

Likewise, the sentencing minute order must be corrected to reflect the court did not impose a consecutive full-term sentence on count 4. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 ["The record of the oral pronouncement of the court controls over the clerk's minute order"].)

Tavarez contends the abstract of judgment for the determinate prison commitment must also be corrected to reflect the imposition of a concurrent sentence on count 4. He asserts by operation of section 669, the term on count 4 must be deemed to be concurrent because the court did not state it was imposing a consecutive sentence on count 4 prior to staying the term under section 654. Tavarez's reliance on section 669 in this context is misplaced as the statute applies when a sentence is ordered to be executed (§ 669, subd. (a)) and his sentence on count 4 was stayed under section 654 and not ordered to be executed. "If section 654, subdivision (a) requires that a sentence be stayed, then concurrent terms pursuant to section 669 may not be imposed." (*People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1239.)

DISPOSITION

We affirm the judgment. We direct the trial court to: (1) delete from the sentencing minute order and the abstract of judgment for the determinate prison commitment the notations indicating a full-term consecutive sentence was imposed on count 4; (2) delete from the abstract of judgment for the indeterminate prison commitment the notations indicating the court imposed a $120 court fee under section

19

1465.8 and a $90 conviction assessment under Government Code section 70373; and (3) forward a certified copy of the amended abstracts of judgment and sentencing minute order to the Department of Corrections and Rehabilitation.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.